UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Rachelle A., | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 17 CV 50365 |
|  | ) | Magistrate Judge Iain D. Johnston |
| Nancy A. Berryhill, Acting | ) |  |
| Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

# **MEMORANDUM OPINION AND ORDER**[1]

This disability case has a relatively narrow scope. Plaintiff only alleged one impairment—feet and ankle problems—making her different from the more typical claimant who alleges multiple impairments affecting multiple body systems. The case has been further narrowed through the administrative process. At issue now is whether plaintiff could work a "desk job" (to borrow the shorthand phrase used by one of plaintiff's podiatrists). Plaintiff testified that she could only work that type of job if she could elevate her feet, for 15 minutes, every single hour throughout the day because her feet allegedly swell after an hour of sitting. Not surprisingly, the vocational expert testified that no employer would allow this many breaks. But the ALJ concluded that plaintiff's testimony was not fully credible and that she was capable of doing a sedentary job (*i.e.* the desk job). To accommodate the swelling concerns, the ALJ added an RFC provision allowing plaintiff to stand for 10 minutes every hour, although she would have to continue to work. The vocational expert testified that jobs were available with this sit-stand option.

---

[1] The Court will assume the reader is familiar with the basic Social Security abbreviations and jargon.

1

One key finding the ALJ relied on was that plaintiff had worked full-time at an assembly line job for six months, a job she obtained through a temporary agency after she filed her disability applications. On this job, she sat the entire work day without elevating her feet. Another key part of the decision was the opinions from two treating podiatrists, both of whom opined that plaintiff could work at a desk or sitting job. But they also gave several arguably equivocal statements about plaintiff's need for extra breaks. These two medical opinions, as well as plaintiff's temporary six-month job, function as Rorschach tests, with each side believing they affirmatively support their positions. After considering all the arguments, the Court is not persuaded that a remand is warranted.

## BACKGROUND

Plaintiff filed her disability applications in January 2015, alleging foot problems from several underlying conditions.[2] She was then 39 years old. Soon after filing her applications, plaintiff's podiatrist, Dr. Zehra Hyderi, completed an RFC questionnaire. Ex. 1F (Jan. 16, 2015).

In the summer of 2015, plaintiff started seeing a second podiatrist, Dr. Mykola Lisowsky. It is not clear whether plaintiff continued to see Dr. Hyderi or just changed doctors altogether.

In September of that same year, plaintiff obtained the temporary job, which lasted until approximately March 2016.

A few months later, in August 2016, Dr. Lisowsky completed two questionnaires, one entitled "Physical Assessment" and the other "Physical Impairment Questionnaire." *See* Exs. 7F, 8F (both dated 8/15/16).[3]

---

[2] These include osteochondritis dessicans and tibialis tendinitis. R. 339.
[3] The two forms are similar and will be hereinafter referred to in the singular as one joint opinion.

On September 21, 2016, the administrative hearing was held. The ALJ first questioned plaintiff about the post-filing temporary job. Plaintiff testified that she stopped working because her feet were swelling from "sitting so long." R. 44. She explained that she could no longer work any job because they all required her "to be on [her] feet," sometimes for up to "ten hours a day." R. 47. Plaintiff testified that she had three surgeries, two in August 2013 and one in March 2014. To treat her ankle pain, she took arthritis medicine and Ibuprofen, elevated her feet, and used ice when needed. She also had a "lot of physical therapy." R. 48. On a typical day, she mostly sat around the house, although she would do chores such as washing dishes and laundry. She could walk a block and a half and stand for 20 minutes at a time. The ALJ asked what was the longest period plaintiff could sit before needing to stand. She answered an hour.[4] R. 51.

Plaintiff's counsel then asked questions. Counsel began by focusing on the issue critical here—namely, the details about plaintiff's need for unscheduled breaks. In the exchange below, counsel attempted to pin plaintiff down on how long she could sit (1 and 1/2 hours versus 1 hour). These details are important because the parties are not far apart in their positions.

> Q  [by plaintiff's counsel] [] Rachelle, you said you sit for about an hour and then what happens?
>
> A  If I'm sitting all day and my feet [are] down, they start to swell and throb.
>
> Q  Does the swelling occur after about an hour?
>
> A  Oh, yes.
>
> Q  And then what do you need to do to reduce the swelling?
>
> A  Elevate my feet, ice them if I need to.
>
> Q  Were you able to do that at this most recent job that you had?
>
> A  No.

---

[4] This question and answer was likely the basis for the ALJ's hourly sit-stand option.

> Q Okay. If you had been able to elevate your legs, how long would you need to elevate them before you'd be able to put your feet flat on the floor again?
>
> A A good 15 minutes.
>
> Q And would that eliminate the swelling for the whole day or would you need to—
>
> A No. I would have to do that in like intervals.
>
> Q Okay. About every hour, you'd need to elevate for 15 minutes. Is that accurate?
>
> A Hour, hour and a half, yeah.

R. 52-53.

On December 12, 2016, the ALJ issued a 10-page decision finding plaintiff not disabled. The ALJ set forth alternative holdings. The ALJ first concluded that plaintiff's earnings from the temporary job exceeded the threshold for substantial gainful activity, which meant that plaintiff's claim failed at step one. In reaching this conclusion, the ALJ found that plaintiff did not meet the exception for an "unsuccessful work attempt." Although the ALJ could have stopped the analysis there, she proceeded with the sequential evaluation, concluding that plaintiff could do sedentary work. Her analysis contains two main parts. The first is the credibility analysis. The ALJ concluded that plaintiff's testimony was not fully credible. Although the ALJ did not itemize her reasons in a neat framework, she referred to four or five rationales. First, plaintiff only underwent "conservative and minimal" treatment in 2015. R. 28 ("treatment consisting primarily of physical therapy, use of an ankle brace, and anti-inflammatory medications"). Second, plaintiff's condition significantly improved after this treatment. Third, plaintiff identified her "main limitation" as being the inability to walk or stand. R. 29. Fourth, plaintiff was able to work for six months where she was allowed to remain seated throughout the workday. There was

arguably a fifth rationale—plaintiff's daily activities. The ALJ discussed this topic earlier in the opinion, noting that plaintiff "perform[ed] numerous household chores, including washing dishes, laundry, and cleaning her house." R. 28.

The second part is the analysis of the medical opinions. The ALJ first gave great weight to an agency physician's opinion that plaintiff could stand or walk for two hours and sit for six hours.[5] The ALJ then addressed the two treating opinions. The ALJ gave great weight to Dr. Hyderi's finding that plaintiff could sit for a total of eight hours a day and could sit for 60 minutes at a time. However, the ALJ only gave little weight to Dr. Hyderi's opinion "regarding the need for extra breaks and [the] likelihood of absences." R. 29. The ALJ noted that Dr. Hyderi's opinion was rendered in early 2015 before plaintiff had shown "significant improvement" from physical therapy. Also, the ALJ noted that plaintiff had been able to work at the temporary job without elevating her feet. The ALJ also gave Dr. Lisowsky's opinion partial weight. The ALJ pointed out that Dr. Lisowsky had opined that plaintiff was "physically capable of working an 8 hour day, 5 days a week on a sustained basis if given a 'desk job.'" *Id.* The ALJ, however, did not agree with Dr. Lisowsky's opinion that plaintiff would not be able to stand or walk any part of the day. The ALJ stated that this was inconsistent with plaintiff's testimony that she was able to stand for 20 minutes and with medical records indicating that she was "able to tolerate standing and walking at work." *Id.*

## DISCUSSION

After analyzing the briefs and reviewing the record, the Court finds that the ALJ's RFC finding is sufficient to affirm the decision. The Court, therefore, will not address the step one

---

[5] The other agency physician opined that plaintiff's impairments were non-severe. The ALJ gave this opinion only little weight.

alternative holding, other than to note that it has some merit. Plaintiff attacks both the credibility and medical opinion analyses.

**Credibility.** The Court is not persuaded that the ALJ's credibility analysis was "patently wrong." *See Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) ("we give the ALJ's credibility finding 'special deference' and will overturn only if it is 'patently wrong'"). The Court will discuss the ALJ's five rationales.

As for the first rationale—that plaintiff only received conservative and minimal treatment—plaintiff has not raised any significant criticism or counter-argument. Plaintiff notes that she had three surgeries but the ALJ found that plaintiff improved in 2015 after these surgeries. This rationale stands largely unrebutted.

As for the second rationale, plaintiff has only raised a partial challenge. Plaintiff does not dispute that her condition improved. Dkt. #15 at 11 (acknowledging that "the record does note an improvement in her condition"). Plaintiff argues, however, that the ALJ improperly "played doctor" in relying on that conclusion to infer that plaintiff could do sedentary work. But this argument overlooks the nature of the credibility inquiry. The ALJ was merely citing this fact to question plaintiff's allegations and was not relying on it as a dispositive justification for the RFC finding. For this reason, the Court does not find any error in this rationale.

Plaintiff has likewise only partially challenged the third rationale, which was that she identified walking and standing as her "main" limitations. In other words, she did *not* emphasize—at least, not before the hearing—that she had sitting problems and specifically did not mention the need to elevate her feet for 15 minutes every hour. After reviewing the evidence cited by the ALJ, the Court finds that it was sufficient. The ALJ cited two statements plaintiff made. First, on February 29, 2016, she visited a physical therapist who wrote the following:

> Patient reports of pain significantly reduced in both feet and has now pain free moments that she is able to tolerate standing and walking at work. She is no longer having trouble going up and down steps. Pain at its worst is at the end of her shift at work and at its worst she rates it at 2/10. She is doing well with home exs.

R. 487. This statement does not refer to any sitting problems. What is more, it contradicts plaintiff's testimony that she did not do *any* standing or walking at the temporary job. Second, on July 14, 2016, plaintiff visited Dr. Lisowsky, who wrote the following:

> She has a difficult time working. Her job requirements require her to be standing all day at work. She cannot find a job whether it is through a temp agency or on her own. Her qualifications include factory work, where she stands all day and also janitorial work. Because of her foot pain, she has been unable to stand for anywhere near the 8 to 10 hours that are required for the jobs that she has.

R. 550. The focus is again on standing and walking, and even then, the question is whether she could do these activities for a lengthy period ("near the 8 to 10 hours" required). Also, this statement, written just a few months after plaintiff stopped working at the temporary job, indicates that she was standing "all day" on that job, which if true, would again be contrary to her hearing testimony. In addition to these two statements, the ALJ separately noted that plaintiff's mother stated in a handwritten note that plaintiff's main problem in not being able to work was not being able to "stand or walk for long periods." R. 30. Again, there was no mention of sitting problems.[6]

---

[6] The above evidence is sufficient, but there was even more in the record that the ALJ could have cited. In her adult function report, plaintiff wrote the following:

In her briefs, plaintiff does not address these statements, but instead asserts that the "medical records substantiated the requirement [that] she elevate her legs." Dkt. #15 at 19. This sentence is followed by a long list of 22 record citations, although there is no discussion of the context or details of the statements being relied on. But this evidence does not directly address the fact that it was *plaintiff* who made the statements about walking and standing being her main problems, not her doctors. Moreover, it is not clear that the doctors believed that plaintiff needed to elevate her feet as a permanent ongoing measure in the workplace. Neither Dr. Hyderi nor Dr. Lisowsky stated on their medical opinions that plaintiff specifically must be allowed to elevate her feet. And most of plaintiff's 22 record citations are to statements doctors made when plaintiff was recuperating from surgery, and other statements were made before the surgeries and before the significant improvement occurred. *See, e.g.*, R. 346 ("Postoperative visit performed"); R. 422 ("she would like to move her surgeries earlier as she is in quite a bit of pain"). Accoringly, they are not inconsistent with the ALJ's rationales.

The fourth credibility rationale was that plaintiff was able to work for six months on the temporary job. Both sides argue that this work experience supports their positions. The ALJ found that it undermined plaintiff's testimony.

---



R. 297.

The ALJ's reasoning was set forth in the step one analysis where the ALJ stated the following:

> [A]lthough the claimant testified that she stopped working at this job due to the pain and swelling in her feet, the record does not show that she was frequently absent from work due to her impairments, or that she worked during a period of temporary remission in her impairment. The claimant also did not state that her work was unsatisfactory, or that she was permitted to elevate her legs or given other special conditions that allowed her to perform her work.

R. 25-26. This paragraph is a series of negative inferences about proof that was not in the record.

Plaintiff focuses her arguments on whether this paragraph addresses various unresolved questions regarding an "unsuccessful work attempt" as defined by regulation SSR 05-2p. Plaintiff argues that a remand is needed to "factually clarify the nature of this employment." Dkt. #15 at 7. One unanswered question, for example, is whether plaintiff's work experience exceeded a six-month cut-off. *Id.* at 8. Plaintiff seems to believe that, if further facts were developed on remand, some counter-explanations *might* emerge. Plaintiff raises a series of speculative questions, stating that "[t]here is no indication if she started full-time,[7] if there was any gap in employment, and/or if she was reduced to less than full-time before March of 2016." *Id.* at 8-9. These questions need not be resolved here because they are only applicable to the step one analysis. As for the larger inference for the RFC finding, the Court finds no basis for second-guessing the ALJ's reasoning. Plaintiff has not pointed to any concrete evidence that the ALJ was wrong in the underlying factual contentions. The only issue is whether the ALJ was permitted to draw an inference from those facts. The Court finds that the ALJ could have reasonably concluded, as one possible inference based on the existing evidence, that plaintiff's

---

[7] Plaintiff's suggestion that she may not have worked full time is undermined by her testimony. The ALJ asked whether she worked full-time or part-time, and plaintiff answered that "[i]t was full-time." R. 43. She did not offer any qualifications to this unequivocal statement.

9

ability to work for a sustained period of six months, even if she did eventually have to stop as she claimed, was still at odds with the more severe limitations described at the hearing.

The fifth rationale concerned the daily activities. As noted above, it is not clear that the ALJ relied on this as a primary credibility rationale because it was mentioned earlier in the opinion. This point aside, the Court finds no error because the ALJ merely stated that plaintiff's activities were "consistent with" her RFC finding. R. 28. One reasonable interpretation is that the ALJ viewed this issue as a draw—*i.e.*, it was not dispositive for either side.

In sum, even if the Court were to grant plaintiff the generous assumption that several of the five credibility rationales were flawed, the Court does not find that this would be enough to overturn the ALJ's credibility finding given that some of the rationales were justified. *See Halsell v. Astrue*, 357 Fed. Appx. 717, 722 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are[.]") (emphasis in original); *cf. Ray v. Berryhill*, 915 F.3d 486, 490 (7th Cir. 2019) ("this is the rare case in which the claimant can overcome the 'considerable deference' we afford [to an ALJ's credibility] findings unless they are 'patently wrong'");

**Medical Opinions.** Plaintiff's second main argument is that the ALJ erred in partially rejecting the opinions from the podiatrists. Relying on several selected statements from each opinion, plaintiff argues that it is reasonable to infer that both doctors agreed that plaintiff would need a 15-minute break every hour to elevate her feet. The Government argues that plaintiff is cherrypicking by relying on only a few answers and ignoring the larger thrust of the two opinions. The Court finds the Government's argument persuasive.[8]

---

[8] To the extent that the Government's arguments go beyond the ALJ's rationales, the Court construes them under the harmless error doctrine and affirms the ALJ's decision on that basis.

Before considering plaintiff's arguments, it is helpful to step back and consider the bigger picture. Each doctor answered questions about plaintiff's capabilities, such as how many minutes she could sit at a time (both circled the highest number allowed by the form—"60 minutes") or how many hours she could sit in a normal day (both circled "8 hours"—again, the highest choice). These answers are fully consistent with the ALJ's finding. But perhaps more direct is the last question on each form, asking the bottom-line question of whether plaintiff could work. Here is Dr. Hyderi's answer:

> 12  Is your patient physically capable of working an 8 hour day, 5 days a week employment on a sustained basis? ☒ Yes ☐ No   *with sitting currently*
>
> 1-16-15                  [signature]                       physician
> Date                    Doctor's Signature                 Title

R. 340. And here is Dr. Lisowsky's answer:

> 12.  Is your patient physically capable of working an 8 hour day, 5 days a week employment on a sustained basis? ☒ Yes ☐ No   → *desk job only*
>
> 8-15-16                  [signature]                       PODIATRIST
> Date                    Doctor's Signature                 Title

R. 560. These answers provide strong support for the Government's contention that these doctors believed plaintiff was able to work a "desk job" (Dr. Lisowsky) or a job "with sitting" (Dr. Hyderi)—both formulations being consistent with the RFC finding.

Plaintiff does not address these answers, but instead focuses on the doctors' answers to two specific questions about unscheduled breaks. Dr. Hyderi's answers are as follows:

> 7. Would your patient need to recline or lie down during a hypothetical 8-hour workday in excess of the typical 15-minute break in the morning, the 30-60 minute lunch, and the typical 15-minute break in the afternoon? ☒ Yes ☐ No   *Currently*

\*     \*     \*

> e. Will your patient need to take unscheduled breaks during an 8-hour workday?
> ☒ Yes ☐ No
> If yes, 1) How often do you think this will happen? _every 2-3 hrs with current_
> 2) How long will each break last before returning to work? _10 minutes_ _condition_

R. 339, 340. Dr. Lisowsky answered the same questions, though numbered differently, as

follows:

> 4. Would your patient need to recline or lie down during a hypothetical 8-hour workday in excess of the typical 15-minute break in the morning, the 30-60 minute lunch, and the typical 15-minute break in the afternoon?
> ☐ Yes ☒ No
>
> * * *
>
> c. Will your patient need to take unscheduled breaks during an 8-hour workday? ☒ Yes ☐ No
> If yes, 1) How often do you think this will happen? _As needed based on foot pain_
> 2) How long will each break last before returning to work? _depends on severity of foot pain_

R. 556; *see also* R. 559.

    Relying on these answers, plaintiff attempts to stitch together a loosely structured joint conclusion—namely, that plaintiff would "need breaks either at will, depending on pain, or in excess of normal breaks." Dkt. #23 at 6. But plaintiff's argument skips over the doctor's specific answers. Upon closer examination, several of them support the ALJ's findings. And where they don't, the two doctors did not agree with each other or even with themselves.

    The Court will start with Dr. Lisowsky. As for the first question, about the need to recline or lie down in excess of the normal breaks, she answered "no." This answer contradicts plaintiff's theory. As for the second question, about the need for unscheduled breaks, she merely wrote that breaks should be taken "as needed" based on plaintiff's pain. This answer is vague because Dr. Lisowsky did not indicate how frequent or long *she* believed these breaks would be. They could have been sporadic and infrequent. Instead, she merely deferred to plaintiff. But this raises the problem that an ALJ need not credit a doctor's opinion if it relies solely on the

patient's subjective allegations. *See, e.g.*, *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013). ("where a treating physician's opinion is based on the claimant's subjective complaints, the ALJ may discount it"). Given that the ALJ separately found that plaintiff's testimony was not credible, it follows that the ALJ could have rejected Dr. Lisowsky's answer on that same basis.

The Court next turns to Dr. Hyderi's answers. As for the second question about unscheduled breaks, Dr. Hyderi merely stated that plaintiff would need breaks every two to three hours and that those breaks would last 10 minutes, not 15 minutes. (Again, neither doctor specifically referred to any need to elevate plaintiff's legs.) The Government argues that this frequency fits within the standard breaks in a workplace. Dkt. #17 at 3 (citing *Rudd v. Comm' of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013) ("[B]reaks every two hours are normal and assumed in most jobs.")). The Court finds that this is a reasonable interpretation of Dr. Hyderi's answer, especially when construed with the bottom-line answer that plaintiff was capable of working a sitting job.

But turning to the first question, Dr. Hyderi did answer "yes" to whether plaintiff would need to recline or lie down "in excess of" the normal breaks. It is true that this answer contradicts the above conclusion and thus provides some support for plaintiff's theory. But the Court finds that the ALJ reasonably could have found that this one answer was an outlier because it was at odds with Dr. Hyderi's many other answers on the same form, including the statement that plaintiff could sit for a full 8 hours in a normal workday. Another problem with plaintiff's reliance on this one answer is that Dr. Lisowsky did not agree with it. She answered "no" to the same question. Thus, the two treating physicians took opposite sides on this exact question. Therefore, it necessarily follows that the ALJ could have reasonably chosen either of these competing interpretations. This point aside, the ALJ also stated that Dr. Hyderi's opinion was

13

rendered before the improvement occurred. This provides an additional reason for rejecting this one answer.[9] Taken together, the Court agrees with the Government's arguments that these two medical opinions, when read fairly and holistically, support the ALJ's decision. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010) ("Rather than nitpick the ALJ's opinion for inconsistencies or contradictions, we give it a commonsensical reading.").

## CONCLUSION

For all the above reasons, plaintiff's motion for summary judgment is denied, the Government's motion is granted, and the ALJ's decision is affirmed.

Date: March 25, 2019　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　　　　　　Iain D. Johnston
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[9] Further, although not commented on by the parties, there is another aspect of Dr. Hyderi's opinion that potentially undermines plaintiff's theory. Dr. Hyderi wrote the word "currently" next to several answers, including the bottom-line answer. The insertion of this word arguably suggests that Dr. Hyderi thought plaintiff's condition might eventually improve such that she could even work a job requiring some standing or walking.